**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARGARET TAVARES, | ) | CASE NO:  5:11-cv-0970 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| v. | ) | |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | |

This case is before the magistrate judge by consent.  Plaintiff, Margaret Tavares ("Tavares") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Tavares' claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, the court **AFFIRMS** the decision of the Commissioner.

I.  Procedural History

On January 18, 2005, Tavares filed an application for DIB and SSI alleging disability as of June 1, 2003 due to a liver disease and Graves disease.  Tavares' application was denied initially and upon reconsideration.  Tavares timely requested an

administrative hearing.

On March 11, 2008, Administrative Law Judge John Kraybill ("ALJ Kraybill") held a hearing during which Tavares, represented by counsel, testified.  Dr. Carl Lee testified as a medical expert ("ME").  On April 4, 2008, ALJ Kraybill found Tavares was able to perform a significant number of jobs in the national economy, and therefore, was not disabled.  Tavares requested review by the Appeals Council.  On November 14, 2008, the Appeals Council reversed the decision of the ALJ and remanded the case for expansion of the record and further consideration.

Administrative Law Judge Mark M. Carissimi ("the ALJ") held a second administrative hearing on June 1, 2009.   Tavares, represented by counsel, testified at the hearing, as did Vocational Expert Bruce Holderead ("VE").  On July 23, 2009, the ALJ issued a decision in which he determined that Tavares was not disabled and denied an award of benefits.  When the Appeals Council declined further review, the ALJ's decision became the opinion of the Commissioner.

Tavares filed an appeal to this court on May 14, 2011.  Tavares argues on appeal that the ALJ erred because (1) he did not properly consider medical opinions in the record, and, therefore, his assessment of Tavares's residual RFC was not supported by substantial evidence; and (2) the ALJ failed properly to evaluate Tavares's allegations of disabling pain.  The Commissioner denies error.

II.  Evidence

A.    Personal and Vocational Evidence

Tavares was born on September 26, 1964.  She has a high school education and has past relevant work as a pants presser.  She has not worked since 2003.

B.      Medical Evidence

On January 14, 2004, Tavares was referred to Dr. David Montgomery, M.D., for evaluation for possible hepatitis C and pruritus.  Tr. at 219-20.  Examination and blood tests resulted in a diagnosis of hepatitis C with the need to rule out liver disease.

Dr. Lawrence Cohen treated Tavares for hypothyroidism in early 2005.  Tr. at 226-27.  She also complained of joint pain and muscle aches, and tests disclosed hepatitis C and a possibility of rheumatoid arthritis.

On May 5, 2005, Charles Smith, M.D., completed a report to the Bureau of Disability Determination ("the Bureau") regarding Tavares's medical history.  Tr. at 198-200.  Dr. Smith diagnosed Tavares as suffering from Graves disease, rheumatoid arthritis, hepatitis C, and hypertension, resulting in weight gain, weakness, and pain in multiple joints.

Following a blood test with positive rheumatoid factors, Dr. Montgomery referred Tavares to Achal M. Vaidya, M.D., for a consultation.  Tavares visited Dr. Vaidya in early June 2004.  Tr. at 142-145.  Tavares complained of polyarthralgic pain in both shoulders, elbows, wrists, hands, knees, ankles, and big toes.  She also reported stiffness upon waking and a worsening of pain at the end of the knee.  She did not notice any joint swelling or redness in her joints.  Her past medical history included a diagnosis of hepatitis C about a year earlier, hypertension, and hypothyroidism. Tavares reported smoking half a pack a day and denied drug or alcohol abuse. Tavares was then taking Norvasc, Lebetalol, Levobunolol, hydrochlorothiazide, aspirin, propoxyphene, Celebrex, Protomix, and ibuprofen as needed.  She had also received one course of a Medrol dosepak.  After a physical examination and consideration of

3

Tavares's blood tests, Dr. Vaidya opined that Tavares suffered from polyarthralgia but not polyarthritis, possible fibromyalgia, and chronic hepatitis C.  He recommended tests and a follow-up in two to three weeks.

Dr. Vaidya saw Tavares again on June 30, 2005.  Tr. at 222.  His assessment of her condition was essentially unchanged.

Tavares visited Dr. Vaidya again on August 30, 2005.  Tr. at 275.   She complained of pain in her knees that worsened with activity and improved with rest, and she also complained of pain in her wrists, ankles, and other joints.  Dr. Vaidya found no signs of synovitis, but he did detect medial joint line tenderness in both knees.  He noted that Tavares's pain might be secondary to early osteoarthritis or to hepatitis C.  A contemporaneous x-ray revealed moderate degenerative arthritis in the patellofemoral and medial compartments of the right knee and mild degenerative changes in the patellofemoral and medial compartments of the left knee.  Tr. at 278.

Tavares began interferon injection therapy for hepatitis C in October 2005.  Tr. at 271-72, 354.  Tavares suffered hair loss and soreness in her mouth, but blood tests for hepatitis C at the end of therapy came back negative.  However, at the end of therapy, she was hospitalized for more than two weeks in May 2006 for severe thrombocytopenia and pancytopenia secondary to a depressed immune system resulting from her hepatitis C treatments.  Tr. at 315-325, 351-353.

On December 21, 2005, Tavares complained of increased pain in the right knee with positive gelling.  Tr. at 274.  The pain was exacerbated by exercise and helped by rest.  Dr. Vaidya detected right knee femoral and medial joint line tenderness, and he recommended quadriceps strengthening exercises and weight loss.  He also offered

4

corticosteroid injections in the right knee, and Tavares said she would consider that.  On March 28, 2006, Tavares again complained of the same symptoms and said that Tylenol did not help with the pain.  Tr. at 375.  Dr. Vaidya again prescribed quadriceps strengthening and weight loss, and he also prescribed Ultram.

On June 3, 2006, Tavares visited the emergency room complaining of headache, and back, leg, and arm pain.  Tr. at 389-391.  She received a morphine injection and was released after being diagnosed with which arthralgias, cephalgia, myofascial back pain, and recent thrombocytopenia with gastrointestinal bleeding.

On July 18, 2006, Tavares reported that her pain had worsened.  Tr. at 374.  According to Tavares, neither Tylenol nor Ultram helped her pain, and her primary care doctor was treating her with Vicodin (Tr. 374).  Dr. Vaidya again recommended quadriceps strengthening and weight loss, and he also referred Tavares to a pain management clinic.

State agency physician Myung J. Cho, M.D., completed a Physical Residual Functional Capacity Assessment on August 19, 2005.  Tr. at 249-255.  Dr. Cho opined that Tavares could perform a full range of light work with no additional limitations.  He also stated that the restriction to light work was due to allegations of fatigue.  In addition, he opined that although Tavares alleged that she could only walk for two or three minutes without stopping, the findings did not support this level of limitation.

On October 24, 2006, Dr. Montgomery completed a Medical Source Statement assessing Tavares's functional capacity.  Tr. at 394-395.  According to  Dr. Montgomery, Tavares could lift/carry ten pounds occasionally for 2-3 hours, stand or walk for two hours in an eight-hour workday for 30 minutes at a time, sit for eight

5

hours in an 8-hour workday, and required rest periods during the workday in addition to regularly scheduled breaks and lunch.  Dr. Montgomery also opined that Tavares could not climb, stoop, crouch, kneel, or crawl because she was unable to put weight or stress on her knees and could only occasionally reach, push/pull, or perform fine or gross manipulation because such activities cause wrist pain.  In addition, Dr. Montgomery asserted that Tavares should avoid heights, moving machinery, extremes of temperature, and fumes due to pain.  He also noted that he had prescribed a wrist brace for her.

On January 26, 2007, Dr. Montgomery completed for the Stark County Department of Job and Family Services a form assessing Tavares's ability to work.  Tr. at 396.  He wrote that Tavares suffered from chronic hepatis C, arthritis, and back pain. He opined that Tavares was presently unable to work and that this would continue for at least six weeks.  He added that if she did work, she would need to have a job that was not physically strenuous, that she could do part-time occasionally or full-time with frequent breaks, and that would allow her to frequently change positions without a requirement of standing or manual dexterity.

On April 16, 2007, Tavares visited Robert Felden, M.D., at the Aultman Center for Pain Management on referral from Dr. Montgomery.  Tr. at 412-418.  Tavares complained of continuous aching and pain in her shoulders, elbows, wrists, back, knees, ankles, and feet, including low back pain radiating into her lower extremities. She rated the pain as five on a scale of ten.  Dr. Felden's examination found paraspinous muscle tenderness and spasm in the lumbar spine and decreased range of motion in flexion and extension due to pain and spasms.  He also detected crepitance

6

bilaterally in Tavares's knees.  An MRI of Tavares's lumbar spine revealed posterolateral disc bulging at L2-3 which narrowed the inferior aspect of the neural foramen on the left, although there was no nerve root contact.  There was also an underlying diffuse disc bulge causing generalized flattening of the ventral thecal sac margin.  At L3-4, a diffuse disc bulge caused a mild narrowing of the inferior aspect of the neural formina bilaterally.  At L4-5 there was also mild and diffuse disc bulging, resulting in mild bilateral narrowing of the neural foramina.  There was also minimal annular fissuring at L4-5.  Dr. Felden prescribed oxycodone for pain, along with diclofenac sodium and Robaxin.

Tavares again visited Dr. Felden on May 10, 2007, reporting that she received only short-term pain relief from the oxycodone and that the pain in her knees had increased.  Tavares reported the pain as being seven on a scale of ten and described the pain as continuous, aching, and shooting.  Dr. Felden switched the oxycodone to oxymorphone.

Beginning July 11, 2008, Tavares received treatment at the Canton Community Clinic.  Tr. at 592-609.  Tavares complained at various times of bilateral knee pain, ankle pain, significant pain generally in her small and large joints, anxiety, and depression.  She was diagnosed with rheumatoid arthritis, chronic pain syndrome, hypothyroidism, hypertension, hypercholesterolemia.  An examination in 2008 revealed tenderness in her proximal interphalangeal joints, knees, and ankles.  A Depo-Medrol injection and Darvocet failed to provide relief.  The treating physician prescribed Vicodin and Paxil.

In late March 2009, Tavares was admitted to the hospital suffering from

7

weakness and numbness in her left hand.  Tr. at 551.  She visited Dr. Gerardo

Cisneros, M.D., on March 26, 2009.  Tr. at 551-53.  Dr. Cisneros diagnosed Tavares as

suffering from hypothyroidism, hypertension, congestive heart failure, rheumatoid

arthritis, hyperlipidemia, chronic pain syndrome, depression, and chronic obstructive

pulmonary disease or asthma.  She was then taking levothyroxine, hydrochlorothiazide,

Coreg, Ambien, Vicodin, Lisinopril, Simvastin, Meloxicam, Paroxetine, Flexeril, aspirin,

and Albuterol via inhaler.  She complained of fatigue, depression, an inability to sleep,

back pain, body aches, and muscle pain.

On June 19, 2009, Dr. Cisneros increased the dosage of Vicodin for pain and

also prescribed Trazodone for sleeplessness.  Tr. at 662.  Dr. Cisneros noted on July 9,

2009 that Tavares did not have any significant swelling or inflammation of the joints and

that she was responding well to Paroxetine and Trazodone.  Tr. at 661.  On August 13,

2009, Tavares reported being in severe pain most of the day but that she was

exercising, trying to lose weight, and seeing her psychiatrist.  Dr. Cisneros prescribed

Neurontin and considered a referral to a pain management specialist.

C.    Hearing Testimony

At the hearing on March 11, 2008, Tavares testified that she failed in her last

attempt to work because of excruciating pain in her feet, knees, ankles, back, and

wrists.  Tr. at 688.  She also made an attempt to go to school for health care

administration but had to quit after a month.  Tr. at 689.  Tavares reported that she has

chronic joint and muscle pain, trouble grasping, bending, sitting, and standing.  Tr. at

693-94.  According to Tavares, if she overexerts herself, she has to go to bed for

several days to recover.  Tr. at 694.  The most recent instance of overexertion consisted

8

of using the bus to keep an appointment and having to walk a block.  Tr. at 694.  She testified that she still suffers from joint pain due to hepatitis C because her body responded violently to interferon therapy, and she almost died.  She was unable, therefore, to complete the therapy that might have eliminated the disease.  Tr. at 694. Tavares told the court that being on her feet exacerbates her knee pain and that her lower back hurts when she turns, sits, or bends over.  Tr. at 695.  Her wrist pain gives her trouble with grasping and affects her hand strength, and she also has trouble with pain in her big toes.  Tr. at 695.  Tavares testified that she was able to sit for no more than 15 or 20 minutes without a break and stand for about 15 minutes without a break. Tr. at 696.  She wore knee braces and a wrist brace on her right wrist.  Tavares reported that she lacked energy and suffered from nausea, depression, confusion, and mood changes due to her medications.  Tr. at 696.

The ME testified that Tavares could lift and carry 10 pounds both occasionally and frequently, could walk a total of two hours in an eight-hour workday, could sit for at least six hours with a sit/stand option, could occasionally push or pull, and occasionally operate hand controls, stoop, kneel, crouch, crawl, and climb stairs or ramps.  Tr. at 700.  He also found that she could frequently reach, handle, and finger, although he contradicted this on cross-examination.  Tr. at 700-701.

At the June 1, 2009 hearing, Tavares testified that she attempted to work part-time for four months in 2008 as a shirt folder in a dry cleaner.  Tr. at 667.  She told that court that she had to quit because she suffered severe pain in her knees, legs, and wrists.  Tr. at 667, 670-671.  According to Tavares, her main problems when she first stopped working were her wrists, feet, and knee, but now she hurts all over and suffers

9

from nausea and depression because of her medications.  Moreover, Tavares testified, that the pain in her feet is so bad that she has trouble sleeping.  Tr. at 673-74.  She also told the court that she spends most of the day in bed due to fatigue.  Tr. at 676-77.  Tavares wore a brace on her right wrist.  Tr. at 679-680.  She no longer took oxycodone or oxymethadone because of side effects, and she was unable to complete her therapy for hepatitis C because of life-threatening complications.  Tr. 675-76.  Tavares said that her oldest children and the father of the youngest child helped take care of the youngest child.  Tr. at 677-78.

The VE testified at the second hearing that Tavares had past relevant work as a shirt presser and as a hosemaker.  The ALJ asked the VE to assume an individual with Tavares's age, education, and work experience who was limited to sedentary work; could lift and carry ten pounds occasionally and five pounds frequently; could stand and walk for two hours in an eight-hour workday; could sit for up to six hours in an eight-hour workday; and could perform simple, routine, tasks involving superficial interaction with co-workers and the public without negotiation or confrontation.  Tr. at 681.  When the ALJ asked if such an individual could perform Tavares's past relevant work, the VE said that she could not.  Tr. at 682.  According to the VE, such an individual could perform other work in the national economy, such as a final assembler, a food and beverage order clerk, a charge account clerk, and other jobs.  Tr. at 682.  The ALJ then asked the VE to assume an individual with the previous limitations but add the limitation that the individual would be off work 20% of the time due to pain and fatigue.  The VE testified that there would be no work for such an individual.  Tr. at 682.  When asked by plaintiff's counsel whether there would be work for an individual with the limitations in the ALJ's

10

first hypothetical but able to only occasionally reach, push, pull or perform fine or gross manipulation, the VE said there was not.  Tr. at 683.

### III.  Standard for Disability

A claimant must establish disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  Second,  the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

11

IV.  Summary of Commissioner's Decision

In determining that Tavares was not disabled, the ALJ made the following

relevant findings:

1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2.     The claimant has engaged in substantial gainful activity since June 1, 2003, the alleged onset date.

3.     The claimant has the following severe impairments:  osteoarthritis bilateral knees, hepatitis C, polyarthralgia,; degenerative disc disease of lumbar spine, obesity, borderline personality disorder and polysubstance abuse in remission.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).  Specifically the claimant can occasionally lift, carry, push, and pull 10 pounds, sit six hours in an eight-hour workday, and stand and/or walk two hours in an eight-hour workday.  The claimant can perform simple, routine work, superficially interact with co-workers and the public without negotiation or confrontation.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on September 26, 1964 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2003 through the date of this decision.

Tr. at 23-30.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Tavares claims that ALJ Carissimi erred because (1) he did not properly consider medical opinions in the record, and, therefore, his assessment of Tavares's residual RFC was not supported by substantial evidence; and (2) the ALJ failed properly to evaluate Tavares's allegations of disabling pain.  The Commissioner denies error.

A.     *Whether the ALJ's opinion is not supported by substantial evidence because he failed to properly weigh medical opinions in the record*

Tavares argues that the ALJ improperly assessed her RFC because he failed to properly consider the opinions of Drs. Montgomery and Lee.

13

    *1.    The ALJ's assessment of Dr. Montgomery's opinion*

Dr. Montgomery was one of Tavares's treating physicians.  The opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983).  This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988).  Where there is insufficient objective data supporting the opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the factfinder may choose to disregard the treating physician's opinion.  *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).  Nevertheless, the ALJ must provide "good reasons" for the weight assigned to treating physicians.  Failure to do so does not constitute harmless error and requires remand. *Wilson v. Commissioner of Social Security*, 378, F.3d, 541, 544 (6th Cir. 2004).  In particular, an ALJ must specify whether a treating physician's opinion is rejected because it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), identify the evidence supporting such a finding, and explain the ALJ's application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to treating physicians's opinion.  *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).  When the ALJ fails to do these things, reversal is required.  *Id.*

14

Dr. Montgomery's assessment of Tavares's RFC appeared in his Medical Source Statement, Tr. at 394-395, and in his assessment of Tavares's ability to work for the Stark County Department of Job and Family Services, Tr. at 396.  In these opinions, he noted that Tavares suffered from chronic hepatis C, arthritis, and back pain.  He opined that Tavares could lift/carry ten pounds occasionally for 2 - 3 hours, stand or walk for two hours in an eight-hour workday for 30 minutes at a time, sit for eight hours in an 8-hour workday, and required rest periods during the workday in addition to regularly scheduled breaks and lunch.  He also opined that Tavares could not climb, stoop, crouch, kneel, or crawl because she is unable to put weight or stress on her knees and could only occasionally reach, push/pull, or perform fine or gross because such activities cause wrist pain.  In addition, Dr. Montgomery asserted that Tavares should avoid heights, moving machinery, extremes of temperature, and fumes due to pain.  He also noted that he had prescribed a wrist brace for her.  He further opined that Tavares was presently unable to work and that if she did eventually work, she would need to have a job that was not physically strenuous, that she could do part-time occasionally or full-time with frequent breaks, and that would allow her to frequently change positions without a requirement of standing or manual dexterity.

In rejecting Dr. Montgomery's assessment of Tavares's RFC, the ALJ wrote the following:

> The undersigned does not agree with Dr. Montgomery's residual functional capacity at Exhibits 25F and 24F.  They are not supported by his brief treatment notes at Exhibits 6F and 27 and the objective medical evidence described above.  In addition, Dr. Montgomery specifically noted that the only support for his opinion was the claimant's history as reported by her.  Thus, I find no objective evidence to support his opinion that the claimant must be allowed to have frequent breaks and could not perform work that requires manual dexterity.

15

(Tr. 29).

Tavares has four objections to this dismissal of Dr. Montgomery's RFC assessment.  First, Tavares contends that the ALJ erred in finding that the only support for Dr. Montgomery's opinion came from Tavares's history as it was reported by her.  According to Tavares, Dr. Montgomery noted that Tavares's history supported his opinion *only* that she should avoid heights, moving machinery, temperature extremes and fumes, not other aspects of his opinion.  Second, Tavares argues that the ALJ wrongly dismissed Dr. Montgomery's opinions regarding Tavares' need for frequent breaks and limitations in manual dexterity as not supported by the record.  Tavares asserts that "the record contains repeated entries from doctors acknowledging her significant problems with hand and wrist joint pain, evidence of tenderness in her PIP joints, a notation from Dr. Montgomery that he prescribed her a wrist brace and Ms. Tavares' testimony that she wears a wrist brace (Tr. 142, 199, 262, 209, 227, 275, 395, 413, 597, 679-680)."  Plaintiff's Brief at 14. Third, Tavares asserts, the ALJ explicitly rejected Dr. Montgomery's opinions with respect to frequent breaks and manipulative limitations as not supported by the record, but he failed to discuss the other limitations asserted by Dr. Montgomery and gives no explicit reason for rejecting them.  Fourth, according to Tavares, the ALJ did not cite any of the factors in the regulations that must be considered in evaluating a treating physician's opinion, including length of treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and any other factors the claimant brings to the ALJ's attention.

Tavares's argument that the ALJ erred in finding that the only support for Dr.

16

Montgomery's RFC assessment came from Tavares's history as it was reported by her is not well taken.  Although Tavares is correct that the reference to Tavares's report of her history appears only next to Dr. Montgomery's assessment of Tavares's environmental restrictions, there are no objective findings anywhere in Dr. Montgomery's assessments.  Three of the fields contain no findings at all.  The other fields include such comments as "can't put weight or stress on knees," "cause wrist pain," "wrist soreness," and "make pain worse."  Tr. at 395.  These are not *objective* findings; they are subjective accounts of pain or weakness. Consequently, the ALJ did not err in saying that the only support for Dr. Montgomery's opinion was Tavares's history as reported by her.

Tavares is correct that the record contains other evidence that Tavares suffers from wrist pain.  The transcript contains many instances in which Tavares alleged wrist pain to Drs. Vaidya, Cohen, Smith, and Montgomery, at the Canton Community Clinic, and in her hearings.  Tr. at 142, 227, 262, 275, 413, 597, 674, and 679-80.  However, the ALJ asserted that he found no *objective* evidence to support Dr. Montgomery's opinion that Tavares could not perform work that requires manual dexterity.  Tavares's allegations of pain are subjective reports, and their weight as evidence depends upon the ALJ finds those allegations to be credible.  As described later in this opinion, the ALJ's determination that Tavares was not fully credible is supported by substantial evidence.

Tavares errs in contending that the ALJ failed to give any reason for rejecting Dr. Montgomery's opinions other than the doctor's opinion that she needed breaks and had difficulties with manipulation.  The ALJ said that, generally, Dr. Montgomery's opinions

17

were not supported by his brief treatment notes at Exhibits 6F and 27 or by the objective medical evidence described in the ALJ's opinion.  In addition, the ALJ also said that there was no objective evidence to support Dr. Montgomery's opinions that Tavares needed frequent breaks and could not perform work that requires manual dexterity.  The ALJ's comment regarding a lack of objective evidence supporting a need for frequent breaks and limits on manipulation did not negate his earlier comment that the limits found by Dr. Montgomery were unsupported by his notes or the objective medical evidence.

Finally, Travares's contention that the ALJ did not cite any of the factors in the regulations that must be considered in evaluating a treating physician's opinion is also not well taken.  The Sixth Circuit has held, "Where there is insufficient objective data supporting the opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the factfinder may choose to disregard the treating physician's opinion."  *Landsaw,* 803 F.2d at 212.  As the reasons that the ALJ gave for rejecting the limitations found by Dr. Montgomery were sufficient to reject that opinion, there was no need for the ALJ to perform any additional analysis to justify not giving controlling weight to Dr. Montgomery's opinion.

For the reasons given above, Tavares's contention that the ALJ's rejection Dr. Montgomery's assessment of Tavares's RFC was unsupported by substantial evidence is not well taken.

2.      *Dr. Lee's opinion*

Tavares also argues that the ALJ erred in ignoring the opinion of the ME, given at the first hearing.  According to Tavares, the ME's opinion at that hearing included a

18

sit/stand option and a limitation that Tavares could only occasionally reach, handle, and finger.  Tr. at 700-01.  Tavares alleges that the ALJ failed to consider this opinion, as evidenced by his failure to include it in his discussion.

Two points should be noted before examining the merits of Tavares's argument.  First, it is not clear whether the ME opined that Tavares could only occasionally reach, handle, and finger.  When the ME testified in answer to the ALJ's question regarding Tavares's RFC, he testified that Tavares could frequently reach, handle, and finger.  *Id.*  However, when plaintiff's counsel questioned him, the following exchange occurred:

> [Plaintiff's counsel]:  [B]ecause of pain in her wrist joints, would that, should that be limited to more of an occasional basis?

> [ME]:  There wasn't much documentation in the record that I have seen, Counsel, as to the degree of involvement of the wrist.  So from an objective standpoint just taking medically determinable impairment I thought occasional rather than frequent was correct.

Tr. at 701.  From the ME's phrasing of his answer, he appeared to be defending his opinion as expressed to the court but inconsistently described the degree of limitation he had found.  Thus, the ME's opinion regarding the extent, if any, to which Tavares was limited in reaching, handling, and fingering objects is not clear.  What is clear, however, is that the ME found that the record was scant regarding the extent to which wrist pain interfered with reaching and manipulation.

Second, the ME's opinion with respect to a sit/stand option is also not clear, and the sit/stand option was apparently intended as an option to sitting.  The ALJ opined as follows:  "The walking is limited to a total of two hours in an eight-hour workday, sitting is unlimited, she can sit for at least six hours and sitting and changing from sit/stand to engage in appropriate with [sic] the normal breaks and lunch hour and workday."  Tr. at

19

700.  It is difficult to tell from the transcript whether the ME believes that Tavares is unrestricted in her ability to sit or if she requires a sit/stand option during a six hour work period as an alternative to unrelieved sitting.

Generally, federal courts review the decisions of administrative agencies for harmless error.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  "[C]ourts are not required to 'convert judicial review of agency action into a ping-pong game' where 'remand would be an idle and useless formality.'"  *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).  For this reason, if an agency does not follow its own procedures, courts will not remand to the agency unless the plaintiff has been prejudiced or has been deprived of substantial procedural rights.  *Rabbers.*, 582 F.3d at 654 (citing *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970)).

In *Monateri v. Comm'r of Social Sec.*, 2011 WL 3510226 (6th Cir. Aug. 11, 2011), the Sixth Circuit determined that an ALJ's failure to mention the opinion of a treating physician was generally reversible error because it prevented the ALJ's opinion from being supported by substantial evidence (extrapolating from *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242-45 (6th Cir. 2007) (holding that the failure to give good reasons for not accepting the opinion of a treating physician is reversible error)).  Even when the ALJ fails directly to give good reasons for giving little weight to the opinion of a treating physician, however, remand is precluded when the ALJ's opinion indirectly attacks "the supportability of the treating physician's opinion or its consistency with other evidence in the record,"  thereby "ensur[ing] adequacy of review and . . . permit[ting] the claimant to understand the disposition of [the] case."  *Reynolds v. Comm'r of Social Sec.*, 2011 WL

20

1228165, at *6  (6th Cir. April 1, 2011) (quoting *Coldiron v. Comm'r of Soc. Sec.,* 2010

WL 3199693, at *4-5 (6th Cir.2010)); *see also Nelson v. Comm'r of Soc. Sec.,* 2006 WL

2472910, at *7-10 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.,* 2005 WL 2139890, at

*6-10 (6th Cir. 2005)).

　　　　The very narrow test by which a federal court may decline to remand a ALJ's

decision that does not directly address the opinion of a treating physician is not applied

to any other failure by the Commissioner to follow his own procedural rules:

> [This] form of harmless error review has not been applied outside the context of
> the reasons-giving requirement of § 404.1527(d)(2), and we decline the invitation
> to extend it . . . The treating physician rule occupies a special place in social
> security cases; indeed, treating physicians are "likely to be the medical
> professionals most able to provide a detailed, longitudinal picture of [the
> claimant's] medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical findings
> alone or from reports of individual examinations."  20 C.F.R. § 404.1527(d)(2).

*Rabbers.*, 582 F.3d at 656.

　　　　In the present case, Tavares alleges that the ALJ failed to consider or explicitly

address the opinion of the ME, given at the first hearing, with respect to the need for a

sit/stand option and limits on manipulation.  As has already been shown, it is not clear

what the ME's opinion was on these matters.  Nevertheless, even if Tavares is correct

that the ME opined that Tavares required a sit/stand option and was limited to only

occasional manipulation, it is Tavares's burden to demonstrate that the ALJ's failure

directly to address this opinion prejudiced her.  *See American Farm Lines,* 397 U.S. at

539 (holding that an agency's failure to follow its own procedures does not require

reversal unless the affected party demonstrates substantial prejudice from the error).

Moreover, even if one were to apply to the failure explicitly to address the ME's opinion

under the very narrow test used to determine prejudice when the ALJ fails directly to address the opinion of a treating physician, Tavares cannot show prejudice.

With respect to the failure to address the sit/stand option, Dr. Montgomery, Tavares's treating physician, opined that Tavares could sit for eight hours in an eight-hour day without limitation.  The sit/stand option that the ME suggested was an alternative to unlimited sitting for six hours in an eight-hour day.  This contradicts the opinion of Tavares's treating physician.  Because the ME neither treated nor examined Tavares, the opinion of the treating physician should be given greater weight.  Moreover, the ALJ accepted Dr. Montgomery's opinion that Tavares could sit for extended periods without a sit/stand option, although the ALJ did reduce the amount of time she could sit to six hours in an eight-hour day.  Thus, Tavares cannot show that the failure explicitly to address the ME's opinion with respect to a sit/stand option prejudiced Tavares.

Nor can Tavares show that she was prejudiced by the ALJ's failure directly to address the ME's ostensible opinion that Tavares was limited to occasional reaching, handling, and fingering.  As noted above, the ALJ explicitly rejected any limitations imposed by Dr. Montgomery other than those found in the ALJ's opinion.  Dr. Montgomery opined, *inter alia*, that Tavares could only occasionally reach, push/pull, or perform fine or gross manipulation because such activities cause wrist pain.  Tr. at 394-395.  As the ALJ rejected such a limitation when asserted by the treating physician, it cannot be argued that he would have accepted the limitation when asserted by the ME, whose opinion is given lesser weight than the opinion of a treating physician.

Because the ALJ indirectly attacked the supportability of the ME's opinion and its

22

consistency with other evidence in the record when he dealt with Dr. Montgomery's opinions, he ensured the adequacy of review and permitted Tavares to understand the disposition of the case. As this precludes remand in the case of failing directly to address the opinion of a treating physician, it also precludes remand in the case of failing directly to address the opinion of a non-treating and non-examining physician, such as the ME.

Finally, Tavares, as the Commissioner notes, fails to assume her burden of demonstrating substantial prejudice resulting from the alleged error in not explicitly addressing the ME's opinion. Absent a showing of prejudice, Tavares does not demonstrate that she is entitled to relief as a result for the procedural error. Consequently, Tavares's claim that the ALJ's RFC finding was not supported by substantial evidence because it fails to address the opinion of the ME is not well taken.

B.      *Whether the ALJ improperly found Tavares not to be entirely credible*

Tavares also contends that the ALJ improperly found Tavares not to be entirely credible because the ALJ relied almost entirely on the evidence that supported his credibility assessment and ignored evidence that contradicted it. The Commissioner asserts that the record fully supported the ALJ's determination.

The ALJ may properly consider a claimant's credibility in weighing allegations of pain. *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In the Sixth Circuit, evaluations of credibility proceed by way of a two-pronged test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

23

*Id.* (quoting *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994)).  If there is objective medical evidence of an underlying condition but the objective evidence does not confirm the severity of the alleged pain, the ALJ must consider the entire record in assessing the claimant's credibility.  *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir. 2007).  Factors relevant to consideration of the record include the following:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment other than medications received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms, such as lying down; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529.  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 532; *Hash v. Comm'r of Social Sec.*, 2009 WL 323101, at *9 (6th Cir. Feb. 10, 2009).  Moreover, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.*"  Walters*, 127 F.3d at 531.

In the present case, the ALJ asserted that he had considered the entire record, and he reviewed Tavares's testimony at the two hearings.  Tr. at 26.  He then found Tavares to be less than fully credible and addressed the evidence that supported this finding.  Tr. at 27-29.  This evidence included inconsistency with the medical evidence in the record, failure to keep appointments, noncompliance with pain treatment, the

24

conservative nature of her treatment, and no evidence of side effects that would interfere with her ability to work within the limits found by the ALJ.

Tavares maintains that the ALJ selectively cited evidence that supported his opinion in four respects.  First, Tavares argues as follows

> [T]he ALJ cited to Ms. Tavares's ill-fated work attempt covering a minimal portion of her alleged period of disability to discredit her complaints (Tr. 28).  However, there is nothing further in the record to suggest daily activities of any degree that would contradict her complaints of ongoing pain and fatigue.

Plaintiff's brief at 17.  The ALJ cited Tavares's work attempt, however, to demonstrate a contradiction between the record and Tavares's allegations of pain.  While the ALJ is required to consider the entire record, he is not required to repeat the whole of it in his opinion.  The ALJ cited only that portion of the record that explained his credibility determination.  It does not follow from this that the ALJ failed to consider other portions of the record.

Second, Tavares argues that the ALJ selectively considered the record because "the ALJ notes that there is no evidence that Ms. Tavares suffers from any side effects of medications that would interfere with her ability to work although she testified that she had to be weaned off Oxycodone and Methadone due to side effects (Tr. 28, 675)."  Plaintiff's brief at 17.  Specifically, the ALJ concluded, "There is no evidence that the claimant's use of prescribed medication is accompanied by side effects that would interfere significantly with her ability to perform work within the restrictions outlined in this decision."  Tr. at 28  Tavares fails to explain how the side effects caused by Oxycodone and Methadone or being weaned off them would significantly interfere with her ability to work as determined by the ALJ.

25

Third, Tavares objects to the ALJ's finding that her allegations of pain and incapacity were not entirely credible because her treatment was conservative in nature. Tavares notes the drugs she took for pain and then concludes, "Unfortunately, there is no apparent to treatment to help Ms. Tavares."  Plaintiff's brief at 17-18.  But in discussing the conservative nature of treatment, the ALJ noted that she had visits with physicians at regularly scheduled intervals and, with respect to her arthritic knees and polyarthralgia, Tavares was not prescribed a cane or a TENS unit.  Treatment *via* scheduled appointments, rather than repeated emergency visits for pain management, and the failure to prescribe ambulatory aids or a TENS unit are clearly relevant to assessing Tavares's allegations of pain and incapacity.

Finally, Tavares objects that there is no evidence that any of Tavares's treating physicians questioned the credibility of her allegations of pain.  While this may be true, it is beside the point.  If it is true that Tavares's treating physicians did not challenge the credibility of her allegations of pain, it is also true that they did not assert that she is credible.  Treating physicians may or may not comment regarding a patient's credibility. The absence of such comments says nothing about a claimant's credibility one way or another.  Consequently, the ALJ's failure to note that Tavares's physicians did not challenge the credibility of her allegations of pain does not demonstrate that the ALJ considered the evidence selectively.

The ALJ found Tavares to be less than fully credible because of inconsistencies between the medical evidence in the record and her allegations, failure to keep appointments, noncompliance with pain treatment, the conservative nature of her treatment, and no evidence of side effects that would interfere with her ability to work

26

within the limits found by the ALJ.  These reasons are substantial evidence in support of his determination.  Tavares's objections to the ALJ's credibility determination, therefore, are not well taken.

VII.  Decision

For the reasons give above, the court **AFFIRMS** the decision of the Commissioner.


Date:  May 14, 2012                          /s/ Nancy A. Vecchiarelli
                                             U.S. Magistrate Judge